## TRUE *v.* MELVIN.

A committee to locate a school-house may be appointed without notice to other parties.

Objections to the persons appointed must be taken before the hearing, if known.

A location made by a committee has no greater effect than one made by the district. It is not conclusive.

The proper notice to be given of a hearing before a committee to individuals and the district, is that limited for the service of process on persons and corporations.

A selectman can not properly act in the appointment of a committee, where his brother is a party.

An unqualified refusal to sell land, selected by a committee as the location of a school-house, without calling for the authority of the party applying, would be a sufficient refusal to justify the selectmen in setting off the land.

The right to a mandamus may be lost by delay.

APPLICATION FOR A MANDAMUS. The petition of W. S. True and seven others, against T. J. Melvin and two others, selectmen of Chester, set forth that on the 11th of June, 1857, W. S. True and others were legal voters in school district No. 8, in Chester, and were aggrieved by the location of the school-house in that district, and applied by petition in writing to the selectmen of Chester, to appoint a committee to examine and report on the same, and to cause a new and more equitable location to be made and recorded. On the same day said selectmen, having considered the same and thinking it expedient, appointed A. S. Dearborn, J. Lane, and R.

W. Moore, a committee to examine and report thereon, they being all qualified voters in said Chester, not residents in said school district. This committee, on the 14th of July, 1857, appointed the 27th of July, 1857, at three o'clock in the afternoon, and the school-house in said district, as the time and place for hearing said petition, and caused due notice in writing to be given to the prudential committee of said district, and one of said petitioners, on the 14th of July, 1857, and said committee attended at said time and place, pursuant, &c., and then and there heard said petitioners, and said school district on said petition, and carefully examined the situation of the district, and school-house, and heard the witnesses and arguments of the parties, and attentively considered the same, and were of opinion that the location of the school-house ought to be changed, and that the petitioners were aggrieved by the location of it, and said committee changed the location thereof, and designated as the spot whereon to set the school-house in said district, a lot of land owned by D. Knowles, situated in said district (properly bounded). And said committee, after said hearing, made their report in writing thereon, by them signed, bearing date November 27, 1857, designating the lot above described as the location of the school-house in said district, and duly returned their report thus made to the selectmen of Chester, and the same was duly recorded in the books of the town, January 1, 1858, and said lot of land thereby became duly designated and established as the place for the location of the school-house in said district. The said D. Knowles, owner of said lot of land, having been frequently applied to for that purpose, has hitherto absolutely refused and still refuses to sell said lot of land for a reasonable price.

On the 28th of September, 1860, the plaintiffs being all legal voters and residents of said district, presented to the selectmen of Chester for 1860, their petition in writing, setting forth the foregoing facts as before stated, requested the said selectmen to lay out said lot, not exceeding half an acre, for the purpose of a school-house lot for said district, and to appraise the damages to the owner thereof, as required, &c.; and the plaintiffs on the 16th of May, 1861, being all residents and legal voters of said district, presented their petition to said Melvin and others, they being selectmen of said Chester for the year 1861, duly qualified and acting as such, and then and there requested them to act on the same, and to lay out said lot, and appraise said damages to the owner thereof, as prayed for in said petition. But said selectmen have hitherto neglected and refused, and still neglect and refuse to lay out said lot for a school-house lot for said district, and to appraise the damages to the owner, as requested, &c., and as required by statute, &c.

Wherefore they pray that said Melvin and others, selectmen of Chester, may be ordered and commanded by this court to lay out said lot for a school-house lot for said school district, and appraise, &c., and cause a record, &c.; and that a writ of mandamus may be issued by said court, directed to them, for that purpose, and for further relief.

The petition was signed by attorney, and not under oath, and an

order of notice issued October 1, 1861, to be served fourteen days
before December term, and requiring an answer to be delivered to
Mr. Stickney within two calendar months after service.  Notice was
given October 7, 1861.

An answer was seasonably filed and properly entitled, in which
"The said defendants say they are not bound by law to lay out
and appraise said lot, and ought not to be commanded to do so; for
the following reasons:

1.  Because it is not alleged in said petition, that said school dis-
trict, before said 11th day of June, 1857, had, at a meeting legally
held, decided upon a location of the school-house therein.

2.  Because G. Marden, one of the selectmen in 1857, was a tax-
payer in said district, and brother of two of the petitioners for said
committee; and because said committee was not appointed by a ma-
jority of said selectmen qualified by law to make said appointment;
and because the same was made without notice to said district.

3.  Because said Knowles has not refused said district to sell them
said lot for a reasonable price.

4.  Because, since the action of the said committee in the prem-
ises, said district have legally decided upon a location for said
school-house, other than that upon said Knowles' lot, and have at
great expense purchased land for the same, and repaired said
school-house, and removed it to said new location, and thereby and
by the laches of said petitioners, they are precluded from availing
themselves of the action of the said committee.

5.  Because said committee did not give said district proper no-
tice of hearing, and otherwise did not act in conformity to law.

The case was heard upon the petition and answer.

*W. W. Stickney*, for the petitioners.

*Charles H. Bell*, for the petitionees.

BELL, C. J.  Since the year 1827 the school districts have had
the power, by the express language of the statutes, to determine the
location of their school-houses.  Laws 1830, 432.  The first question
arising in this case is, whether it is necessary, in a petition to the
selectmen, by parties aggrieved by the location of a school-house,
for the appointment of a disinterested committee to hear and de-
cide upon that question, to allege how or by whom the location
was determined.  The petition impliedly states that a location has
been made, that there is a school-house occupying a location in the
district, and that by that location they are aggrieved.

By the statute on this subject (Rev. Stat., ch. 75, secs. 1 and 2), "any
district may decide upon the location" of a school-house.  "If any
three or more voters in such district are aggrieved by such loca-
tion, they may apply by petition to the selectmen, who, if they
think it expedient, shall appoint a committee of three or more
qualified voters of the town, not resident in the district, to ex-
amine and report thereon."  It seems to be supposed that by the
phrase, such location, the provision for this special remedy was con-

fined to a location made by the district. But this seems to us a narrow construction of a statute purely remedial. In a country changing as rapidly as ours, a location proper and suitable when made, may become a grievance in a few years, by the laying out of new roads, changes of the limits of districts, the growth of villages, changes of business, and the like; and there is no reason that a remedy like this should be restricted to one of several cases of the same class. And we think the words such location, may be well understood to refer to any location of a school-house, however it may have been determined. This statute has been altered so as to read "by the location of any school-house therein;" but we regard the change as unnecessary and immaterial, in any other view than to remove doubts of its meaning. Stat. 1861, ch. 2509. Very many cases may be found, where the locations of school-houses were decided long before 1827, and it might now be difficult to show by what authority they were located. If it was held to be necessary that the district should first determine the location, we know of no process by which the district could be compelled to act on the subject, where they have a house whose position is satisfactory to the majority.

It is objected that the appointment of the committee here, was made without notice to others interested. The general principle, on which this objection rests, is undoubted. It probably has not been extended to cases of this class, where advantage can be taken of any disqualification of the committee, when the report comes to be considered.

It is said the petition does not ask the appointment of an impartial committee. This essential requisite is so strongly implied, that it can hardly be considered indispensable to refer to it, however proper it may be in itself.

It is insisted that a party ought not to be heard, to take an objection of this kind at the end of a case, if he has previously acquiesced; that exceptions to the committee should be made, if at all, before the hearing is commenced, and this seems to us the proper course. Objections are always made to jurors before the trial, if the grounds of objection are known, and if a party stands by and allows the trial to go on without objection, he can not be heard to make any afterward.

It is urged that by statute it is declared what shall be the effect of the decision by such a committee, fixing the location of a school-house. The language is, "after a hearing, their report thereon, signed by them, returned to the selectmen, and recorded in the books of the town, shall be binding on said district, as if such new location had been made by a vote of the district." And we think this provision must limit the effect of the decision. The district has a continuing power to determine from time to time the location of the school-house, where it has been fixed by themselves. They may change it as often as the majority changes; and for aught we discover in the law, no permanent location can exist. A statute of limitations on this subject would be wise, but none has been provided. It is difficult to feel satisfied with such a result, since it

puts it in the power of a majority to disregard the rights of the minority, and the decision of an impartial committee. The real difficulty in effecting a reasonable settlement of this class of questions, is the attempt to apply to them the rule that the majority shall govern. The theory of our government is, that the people have the capacity to decide what is best for the common weal, which is a kind of question into which private interest rarely obtrudes itself. But admitting in the strongest terms the capacity and fitness of the people for self-government, it by no means follows that a public meeting of parties interested is a safe tribunal to decide questions involving private right, such as is the question of the location of a school-house. It is in its nature a judicial question, to be decided, so far as may be, by impartial and disinterested judges. The award of such a board might be judiciously made conclusive for a reasonable time, as for five, or ten years. But the whole subject is under the control of the Legislature, who have in clear terms given such effect to the decision of the committee, as makes it merely advisory, and not binding on the majority. If the district, after a decision by a committee, establish a different location, their decision supersedes the award of the committee, and it can no longer be regarded as binding on any body.

It is objected that the notice of ten or eleven days, given by the committee, was not sufficient; the statutes contemplating that such notice should be given to corporations, as may enable them to hold corporate meetings, before they are required to be heard. Where no length of time is prescribed for the notice to be given of legal proceedings, the general requirement of the law is, that the notice must be reasonable, to be judged of by the court, according to the circumstances of each case; yet the court, we think, have usually resorted, in all such cases, for their guide, as to what ought to be deemed reasonable, to the statutes, which prescribe a definite time for notice in analogous cases; and those periods are generally found to be fourteen days in the case of individuals, and thirty days in the case of corporations. In general, we are inclined to regard thirty days as the measure of reasonable notice of legal proceedings affecting school districts, where the statutes or rules of court do not prescribe a shorter period, and where there are no special circumstances. This objection is immaterial, as it was not taken at the hearing.

It is objected that one of the selectmen, by whom the committee were appointed, was himself a tax payer in this district, and brother of two of the petitioners. It is not open to any doubt that a selectman so situated could not rightfully take any part in the selection of a committee. The acts of the other two selectmen would be binding, if he took no part, and if the case depended on that, it might be material to inquire how the fact was in this respect. If it was left to presumption, we should hardly be willing to suppose that any man could be elected a selectman who was not capable of seeing the impropriety of his taking any part in a case in which his brothers were parties.

The answer insists that the owner of the land did not refuse the

district to sell to them the land on which the committee proposed to locate the school-house. This raises a question of fact upon which the court might well wait for evidence to be taken; but the language implies an intent to raise the legal question, whether a man can be held to refuse when no application is made to him by any one authorized to ask. The district, it is very apparent, have made no attempt to obtain a deed of this land; and it has probably never been refused to them, or any agent authorized by them. But we are inclined to think that an unqualified refusal, without raising any question as to the authority of those who make the application, would be a sufficient refusal to justify the selectmen in setting off the land under this statute.

It is said there has been such laches on the part of these petitioners, in prosecuting their application, as to leave the district at liberty to take their own course, on the presumption that the application was abandoned. It is difficult to resist the impression that the proceedings have been unreasonably delayed. The report of the committee was dated November 17, 1857. It was recorded January 1, 1858. No application was made to the selectmen to set off the land till September 28, 1860, and that board of selectmen merely did nothing. The petition, on which this application is founded, was dated May 16, 1861, and the application October 1, 1861. This delay may be well construed as a waiver of the proceedings in 1857.

*Petition dismissed.*